**PELTON GRAHAM LLC**
Brent E. Pelton (BP 1055)
Taylor B. Graham (TG 9607)
111 Broadway, Suite 1503
New York, NY 10006
Telephone: (212) 385-9700
www.peltongraham.com

*Attorneys for Plaintiff and the Putative*
*FLSA Collective and Class*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **DAWID HADER, Individually and On Behalf of All Others Similarly Situated,**<br><br>**Plaintiff,**<br><br>**-against-**<br><br>**E-J ENERGY, LLC and E-J ELECTRIC INSTALLATION COMPANY, Jointly and Severally,**<br><br>**Defendants.** | **CLASS & COLLECTIVE<br>ACTION COMPLAINT**<br><br>**Jury Trial Demanded** |

Plaintiff Dawid Hader ("Hader" or "Plaintiff"), individually and on behalf of all others similarly situated, as collective and class representative, upon personal knowledge as to himself and upon information and belief as to other matters, alleges as follows:

## NATURE OF THE ACTION

1.      Defendant E-J Energy, LLC ("E-J Energy") is a subsidiary that operates the gas and utility construction division of one of the nation's largest and oldest electrical construction contractors, Defendant E-J Electric Installation Company ("E-J Electric").

2.      E-J Electric operates multiple divisions throughout the United States, including several in the State of New York and specifically in New York City, where the company is headquartered.  Among others, E-J Electric operates the following divisions in New York State: Roadway & Outdoor Specialty Division with its main office in Brooklyn, New York; the Transit Division with its main office in New York, New York; the Prefabrication Division with its main office in Bronx, New York; and the Gas & Utility Construction Division (provided through E-J Energy, LLC) with its main office in Bronx, New York and a branch office in Syracuse, NY. (*See* https://www.ej1899.com/locations/ - last accessed on April 24, 2025).

3.      Throughout the relevant time period, E-J Electric and E-J Energy (hereinafter referred to collectively as "E-J") have contracted, either as a general contractor and/or as a subcontractor, with private companies and with government agencies to provide construction, repair, replacement, relocation, and maintenance of electric lines, telecommunication, and other public utility systems throughout New York State.

4.      Plaintiff is a former laborer who worked for E-J in the greater New York City area on numerous private and public projects.

5.      Plaintiff and other members of the collective and putative class (collectively, the "Plaintiffs") are construction laborers, laborer-drivers, operators (including, without being limited to, excavator and dump truck operators), pipe fusers, mechanics, construction flaggers, and other workers who performed manual construction labor for E-J throughout New York State.

6.      Throughout the relevant time period, notwithstanding the fact that Plaintiffs were required to report to and perform work at E-J's yards each morning prior to traveling to the job sites, and were required to return to the yard after leaving the job sites each afternoon, Plaintiffs were only paid for time spent working at the job sites and were not compensated at all for time

spent working at E-J's yards, participating in mandatory weekly safety meetings and mandatory certificate/trainings, or for time spent traveling to and from the yards to the different job sites. Thus, Plaintiffs were consistently paid for fewer hours than they actually worked, many of which were hours worked in excess of forty (40) in a week, for which they should have been paid overtime premiums.

7.      Plaintiff brings this action to recover unpaid overtime premium pay owed pursuant to both the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.* and the New York Labor Law ("NYLL"), §§ 650 *et seq.*  For weeks in which Plaintiff and the class members worked a total of fewer than forty (40) hours, Plaintiff also brings a claim for unpaid "gap-time" wages, pursuant to the NYLL.

8.      Plaintiff brings his FLSA claims on behalf of himself and all other similarly situated employees of Defendant and his NYLL claims on behalf of himself and a Federal Rule of Civil Procedure 23 class of all laborers, laborer-drivers, operators, pipe fusers, mechanics, construction flaggers, and all other workers performing manual construction labor for E-J in New York State during the six (6) year period preceding the filing of this complaint, plus 228-day COVID-19 tolling period instituted by the Governor of New York in several Executive Orders between March and October 2020.

## JURISDICTION AND VENUE

9.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331, 1337 and 1343, and supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

10.     In addition, the Court has jurisdiction over Plaintiff's claims under the FLSA pursuant to 29 U.S.C. § 216(b).

11.    Venue is proper in this district pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims occurred in this district.

12.    This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

13.    On March 20, 2020, New York Governor Andrew M. Cuomo signed Executive Order 202.8 in an effort to stem the spread of COVID-19, which tolls the thirty (30) days "any specific time limit[s] for the commencement, filing, or service of any legal action, notice, motion or other process or proceeding" under New York State laws or court procedural rules. The thirty (30)-day tolling period began on March 20, 2020 and continue until April 19, 2020. On April 7, 2020, Governor Cuomo signed Executive Order 202.14, which extended the tolling period to May 7, 2020. Subsequently, on May 7, 2020, Governor Cuomo issued Executive Order 202.28, tolling all statutes of limitations for an additional thirty (30) days through June 6, 2020. June 6, 2020. On June 6, 2020, Governor Cuomo issued Executive Order 202.38, tolling all statutes of limitations until July 6, 2020. On July 7, 2020, Governor Cuomo issues Executive Order 202.48 tolling all statutes of limitations until August 5, 2020, Governor Cuomo issued Executive Order 202.55, which tolled all statutes of limitations until September 4, 2020. On September 4, 2020, Governor Cuomo signed Executive Order 202.60, which extended the tolling period an additional thirty (30) days to October 4, 2020, Governor Cuomo issued Executive Order 202.67, which extended the tolling period to November 3, 2020. In total, the Executive Orders set forth herein provided for a tolling of the statute of limitations of two hundred and twenty-eight (228) days.

## **THE PARTIES**

**Plaintiff:**

14.    Plaintiff Dawid Hader was, at all relevant times, an adult individual residing in Queens County, New York.

15.    Plaintiff worked for E-J as a construction laborer from in or around November 2021 through approximately late December 2024, when Plaintiff was terminated from his employment as a result of a work accident (the "Hader Employment Period").

16.    Throughout the Hader Employment Period, Plaintiff primarily performed work for Defendant based out of E-J's Bronx yard, located at 365 Morris Avenue, Bronx, New York 10460 (the "Bronx Yard") and at job sites throughout New York City.

17.    Upon information and belief, in addition to the Bronx Yard, during the relevant time period, E-J has maintained other yards throughout the greater New York City area, including in Westchester county, Long Island City, and Brooklyn, New York.

18.    Throughout the Hader Employment Period, Plaintiff typically worked the same hours each day, from approximately 6:00 am until between approximately 3:45 pm and 4:00 pm. During the winter, Plaintiff typically worked five (5) days per week, Monday through Friday, for a total of approximately forty-seven and one half (47.5) to fifty (50) hours per week. During the remainder of the year, Plaintiff worked either five (5) or six (6) days per week (including work on a Saturday approximately three times per month), for a total of approximately fifty-seven (57) to sixty (60) hours per week.

19.    Throughout the Hader Employment Period, Plaintiff was a union laborer rate of approximately the following amounts: $43.50 dollars per hour from in or around November 2021 to in or around June 2022; $44.00 dollars per hour from in or around July 2022 to in or around

June 2023; $44.50 dollars per hour from in or around July 2023 to in or around June 2024; and $45.00 dollars per hour from in or around July 2024 to in or around December 2024. Plaintiff received benefits from the Laborer's Local Union 731.

20.    Plaintiff consents in writing to be party to this action, pursuant to 29 U.S.C. § 216(b), and his consent form is attached hereto.

**Defendants:**

21.    Defendant E-J Energy, LLC is an active New York corporation with a service of process address at 46-41 Vernon Blvd., Long Island City, New York 11101.

22.    E-J Energy, LLC initially registered with the New York State Department of State on September 25, 2017.

23.    Defendant E-J Electric Installation Company is an active New York corporation with its principal executive office located at 46-41 Vernon Blvd., Long Island City, New York 11101.

24.    E-J Electric Installation Company was initially registered with the New York State Department of State on January 15, 1912.

25.    E-J Energy, LLC and E-J Electric Installation Company are hereinafter referred to collectively as "E-J" or "Defendants."

26.    Upon information and belief, E-J Energy, LLC is a wholly-owned subsidiary of E-J Electric Installation Company.

27.    At all relevant times, Defendants' operations have been interrelated and unified and Defendants utilize their corporate entities and trade names interchangeably as a single enterprise, referred to as "E-J Electric" or the "E-J Group." Defendants also represent to the public that E-J is a single enterprise, through common marketing and advertising, including through their website:

www.ej1899.com.

28.     At all relevant times, Defendants have been owned, operated, and managed by the same individuals or entities at the same corporate headquarters (*see* www.ej1899.com/leadership), utilizing the same corporate operational practices, including the pay practices complained of herein. In particular, E-J has a single CEO and single President that manage the operations of all divisions of E-J from their corporate headquarters in Long Island City, New York.

29.     At all relevant times, Defendants have been a joint employer of Plaintiff and the Collective Action Members and Class Members by, among other things, acting in the interest of each other with respect to the employees, paying the employees by the same methods, and sharing control over the employees. On their website, Defendants reference the "dedicated workforce of over 3,000 employees" of E-J, without distinguishing between divisions or entities. (www.ej1899.com/history). Likewise, E-J has centralized job postings and processing, whereby workers apply to work for E-J, rather than to its various divisions or entities.

30.     At all relevant times, Defendants have each been and continue to be an employer engaged in interstate commerce and/or the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

31.     Upon information and belief, at all relevant times, each Defendant had gross revenues in excess of $500,000.00. (*See* www.ej1899.com/history ["...an annual sales volume surpassing $1.5 Billion"]).

32.     At all relevant times, Defendants employed and/or continue to employ Plaintiff and each of the Collective Action Members within the meaning of the FLSA.

33.     At all relevant times, Plaintiff and Class Members were employed by Defendants within the meaning of the NYLL, §§ 2 and 651.

## FLSA COLLECTIVE ACTION ALLEGATIONS

34.     Pursuant to 29 U.S.C. §§ 207 & 216(b), Plaintiff brings his First Cause of Action

as a collective action under the FLSA on behalf of himself and the following collective:

> All persons employed by E-J at any time since April 24, 2022 and
> through the entry of judgment in this case (the "Collective Action
> Period") who worked as construction laborers, laborer-drivers,
> operators, mechanics, pipe fusers, construction flaggers, and all
> other workers performing manual construction labor, in New York
> State (the "Collective Action Members").

35.     A collective action is appropriate in this circumstance because Plaintiff and the

Collective Action Members are similarly situated, in that they were all subjected to Defendants'

illegal policies of failing to pay for off-site work performed, including overtime premiums for all

work performed in excess of forty (40) hours each week.  As a result of these policies, Plaintiff

and the Collective Action Members did not receive the legally-required overtime premium

payments for all hours worked in excess of forty (40) hours per week.

36.     Plaintiff and the Collective Action Members have substantially similar job duties

and were paid pursuant to a similar, if not the same, payment structure.

## FED. R. CIV. P 23 NEW YORK CLASS ALLEGATIONS

37.     Pursuant to the NYLL and the New York common law, Plaintiff brings his Second

and Third Causes of Action under Rule 23 of the Federal Rules of Civil Procedure on behalf of

himself and the following class:

> All persons employed by E-J at any time since September 8, 2018
> and through the entry of judgment in this case (the "Class Period")
> who worked as laborers, laborer-drivers, operators, pipe fusers,
> mechanics, construction flaggers, and all other workers who
> performed manual construction labor in New York State (the "Class
> Members").

38.     The Class Members are readily ascertainable. The number and identity of the Class

Members are determinable from the records of Defendants. For purposes of notice and other

purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by any means permissible under Federal Rule of Civil Procedure.

39.    <u>The Class Members are so numerous that joinder of all members is impracticable.</u>

40.    Upon information and belief, there are well in excess of forty (40) Class Members.

41.    <u>Common questions of law and fact exist as to all Class Members and predominate over any questions solely affecting individual Class Members.</u> Such common questions will determine Defendants' liability to all (or nearly all) Class Members. These common questions include:

a.    whether Defendants employed Plaintiff and the Class Members within the meaning of the NYLL;

b.    whether Defendants failed to keep true and accurate time records for all hours worked by Plaintiff and the Class Members;

c.    whether Defendants failed and/or refused to pay Plaintiff and the Class Members regular wages for all non-overtime hours worked each workweek (i.e., gapt-time wages);

d.    whether Defendants failed and/or refused to pay Plaintiff and the Class Members overtime premiums for all hours worked in excess of forty (40) hours per workweek;

e.    whether Defendants failed to pay wages to Plaintiffs and the Class Members for all time spent working and traveling from/to Defendants' yard to/from job sites for the benefit of Defendants;

f.    whether Defendants' failure to properly pay Plaintiff and the Class Members lacked a good faith basis; and

g.  whether Defendants are liable for all damages claimed hereunder, including but not limited to compensatory damages, liquidated damages, interest, costs and disbursements and attorneys' fees.

42.  <u>Plaintiff's claims are typical of the Class Members' claims</u>. Plaintiff, like all Class Members, was a construction employee of Defendants who worked for Defendants pursuant to their corporate policies. Plaintiff, like all Class Members, was, *inter alia*, not paid regular wages for all hours worked during non-overtime weeks or overtime premium pay for all hours worked over forty (40) hours in a given workweek. If Defendants are liable to Plaintiff for the claims enumerated in this Complaint, they are also liable to all Class Members.

43.  <u>Plaintiff and his Counsel will fairly and adequately represent the Class</u>. There are no conflicts between Plaintiff and the Class Members, and Plaintiff brings this lawsuit out of a desire to help all Class Members, not merely out of a desire to recover his own damages.

44.  Plaintiff's counsel are experienced class action litigators who are well-prepared to represent the interests of the Class Members.

45.  <u>A class action is superior to other available methods for the fair and efficient adjudication of this litigation</u>.

46.  Defendants are sophisticated parties with substantial resources. The individual plaintiffs lack the financial resources to vigorously prosecute a lawsuit in federal court against the corporate defendants.

47.  The individual members of the Class have no interest or capacity to bring separate actions; Plaintiff is unaware of any other currently pending litigation concerning this controversy; it is desirable to concentrate the litigation in one case; and there are no likely difficulties that will arise in managing the class action.

## ADDITIONAL FACTUAL ALLEGATIONS

**Plaintiff and the Collective and Class Members Were Not Paid Wages for All Hours Worked**

48.     Throughout the relevant time period, Defendants failed to pay Plaintiff and the Collective and Class Members wages for all hours worked at their regular rate or overtime premiums of one and one-half (1.5) times their regular rate for all hours worked in excess of forty (40) in a week.

49.     Pursuant to Defendants' policy, Plaintiff and the Collective and Class Members were required to arrive at one of Defendants' yards at approximately 6:00 am to begin their work, including receiving their job assignment and loading the Defendants' trucks with necessary tools and equipment needed for the day. Depending on the location of a given day's work site, Plaintiff and the Collective and Class Members typically arrived at the work sites at approximately 7:00 am. Plaintiff and the Collective and Class Members then performed their construction duties at the work sites for approximately eight (8) hours. Subsequently, Plaintiff and the Collective and Class Members were required to return to Defendants' yard, unload certain equipment and materials and finish their workday. Plaintiff and the Collective and Class Members typically finished performing these duties between approximately 3:45 pm and 4:00 pm.

50.     Upon information and belief, E-J workers from multiple divisions reported to Defendants' yards each morning and Plaintiff observed numerous E-J employees working in the yard each morning.

51.     For those Collective and Class Members who were required to drive one of Defendants' trucks, as part of their driver duties, they were required each morning to check the operation of the truck, fill it with gas (if needed), load materials, equipment, and tools, and to unload these items at the end of the day.  They were not compensated for these mandatory tasks.

52.    In addition to the daily work required at the Defendants' yards, once per week, typically on Wednesdays, Plaintiff and the Collective and Class Members were required to attend a mandatory safety meeting at the yard to which they were assigned. These safety meetings typically lasted between twenty (20) and twenty-five (25) minutes and, upon information and belief, were required for all construction workers employed by Defendants, not just those employed by E-J Energy. These safety meetings were uncompensated.

53.    Upon information and belief, if one of Defendants' construction workers failed to show up or show up late at the weekly safety meeting, they would not be permitted to work that day.

54.    Throughout the relevant time period, Defendants kept track of the hours that Plaintiff and the Collective and Class Members worked at the job sites only through handwritten timesheets. Plaintiff and the Collective and Class Members were not required to sign those time records.

55.    In addition, Plaintiff has knowledge, from observations at the Bronx Yard and discussions with his co-workers, that other employees of E-J were required to spend time during weekdays at one of E-J's yards, to renew their certifications or receive specific training as part of their employment requirements. Upon information and belief, the time spent on the training and/or certifications was not compensated by E-J.

56.    Upon information and belief, Defendants' foremen and supervisors typically recorded that the construction workers worked for eight (8) hours per day, even when the workers were required to work longer. At no time did foremen and supervisors track or record the time spent working by Plaintiff and the Collective and Class Members at Defendants' yard or time spent traveling between the yard and work sites. As a result, Plaintiff and the Collective and Class

Members were not compensated for a significant number of hours worked each week.

57.     Defendants were well aware of their failure to compensate Plaintiff and the Collective and Class Members for all hours worked, as their company policy was to only record and pay for time spent working at the work sites.  Plaintiff and certain of the Collective and Class Members discussed the Defendants' policy of failing to compensate for the hours worked at the yard and the travel time. Upon information and belief, members of the Collective and Class complained to Defendants about the uncompensated work time but never received an explanation of why those hours were not compensated, other than it was the Defendants' practice that had been in place for decades. Defendants' policy of not compensating its workers for mandatory time spent working in their yards or for mandatory time spent traveling between the yards and job sites was willful, in that it was done with knowledge that time worked and time spent traveling was required by Defendants and done exclusively for Defendants' benefit and therefore should have been compensated as regular work time.

58.     Defendants' failure to comply with the federal and state law in paying for all such time spent working by Plaintiff and Collective and Class Members lacked any good faith basis under the law.

59.     Throughout the relevant time period, notwithstanding the fact that Plaintiff or the Collective and Class Members were required to report to and perform work at one of Defendants' yards at the start of their work day prior to traveling to the work sites and were required to return to the yard at the end of the day, at no point did Plaintiff or the Collective and Class Members receive compensation for these non-work-site hours.

60.     Defendants' failure to pay wages for all hours worked each week, including all work performed at Defendants' yard and traveling to and from the yard, was a corporate policy

which applied to all laborers, laborers-drivers, operators, pipe fusers, mechanics, construction flaggers, and all other workers who performed manual construction labor.

61.    Defendants' failure to pay overtime premiums of one and one-half (1.5) times the regular hourly rate for all hours worked in excess of forty (40) per week was a corporate policy that applied to all laborers, laborers-drivers, operators, pipe fusers, mechanics, construction flaggers, and all other workers who performed manual construction labor, with the exception of foremen.

62.    Plaintiff is aware that many other employees of Defendants left their employment with Defendants due to the unlawful payment practices complained of herein.

**FIRST CAUSE OF ACTION**
**FAIR LABOR STANDARDS ACT – UNPAID OVERTIME**
**(Brought on Behalf of Plaintiff and the Collective Action Members)**

63.    Plaintiff, on behalf of himself and the Collective Action Members, repeats and realleges each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

64.    Defendants violated the FLSA overtime rights of Plaintiff and the Collective Action Members by failing to pay overtime premiums of one and one-half (1.5) times employees' regular hourly rates for all hours worked in excess of forty (40) hours per week.

65.    By failing to pay overtime at a rate not less than one and one-half times the regular rate of pay for work performed in excess of 40 hours per week, Defendants have violated and continue to violate the FLSA, 29 U.S.C. §§ 201 *et seq.*, including 29 U.S.C. §§ 207(a)(1) and 215(a)(2).

66.    The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

67.    Defendants' failure to pay overtime caused Plaintiff and the Collective Action Members to suffer loss of wages and interest thereon. Plaintiff and the Collective Action Members are entitled to recover from Defendants their unpaid overtime premium compensation, damages for unreasonably delayed payment of wages, liquidated damages, reasonable attorneys' fees, and costs and disbursements of the action pursuant to 29 U.S.C. § 216(b).

**SECOND CAUSE OF ACTION**
**NEW YORK LABOR LAW – UNPAID GAP-TIME WAGES**
**(Brought on Behalf of Plaintiff and the Class Members)**

68.    Plaintiff, on behalf of himself and the Class Members, repeats and realleges each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

69.    Defendants violated the NYLL rights of the Plaintiff and the Class Members by failing to pay wages for all hours worked each week, including time spent working at the yard, time spent traveling to and from the yards and job sites, and time spent attending mandatory safety meetings and other trainings.

70.    During weeks when Plaintiff and Class Members worked fewer than forty (40) hours, the hours that Defendants failed to pay should have been paid at Plaintiff's and Class Member's regular rates.

71.    By failing to pay Plaintiff and Class Members at their regular rate for all non-overtime hours worked each week, Defendants have violated NYLL § 663(1).

72.    Defendants' failure to pay wages for all hours worked caused Plaintiff and the Class Members to suffer loss of wages and interest thereon. Plaintiff and the Class Members are entitled to recover from Defendants their unpaid regular wages, damages for unreasonably delayed

payment of wages, liquidated damages, reasonable attorneys' fees, and costs and disbursements of the action pursuant to the NYLL.

### THIRD CAUSE OF ACTION
### NEW YORK LABOR LAW – UNPAID OVERTIME
**(Brought on Behalf of Plaintiff and the Class Members)**

73.     Plaintiff, on behalf of himself and the Class Members, repeats and realleges each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

74.     Defendants violated the NYLL overtime rights of the Plaintiff and the Class Members by failing to pay overtime premiums consisting of one and one-half (1.5) times employees' regular hourly rates for all hours worked in excess of forty (40) hours per week.

75.     Defendants willfully violated Plaintiff's and the Class Members' rights by failing to pay overtime compensation at a rate of not less than one and one-half times the regular rate of pay for hours worked in excess of 40 each week, in violation of the NYLL and regulations promulgated thereunder.

76.     Defendants' failure to pay overtime premium compensation caused Plaintiff and the Class Members to suffer loss of wages and interest thereon. Plaintiff and the Class Members are entitled to recover from Defendants their unpaid overtime compensation, damages for unreasonably delayed payment of wages, liquidated damages, reasonable attorneys' fees, and costs and disbursements of the action pursuant to the NYLL.

### PRAYER FOR RELIEF

Wherefore, Plaintiff, on behalf of himself and all other similarly situated Collective Action Members and Class Members, respectfully requests that this Court grant the following relief:

a.    Designation of this action as a collective action on behalf of the Collective Action Members and ordering the prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all similarly situated members of an FLSA Opt-In Class, apprising them of the pendency of this action, permitting them to assert timely FLSA claims in this action by filing individual Consents to Sue pursuant to 29 U.S.C. § 216(b) and appointing Plaintiff and his counsel to represent the Collective Action Members;

b.    Certification of this action as a class action pursuant to Fed. R. Civ. P. 23(b)(2) and (3) on behalf of the Class, appointing Plaintiff and his counsel to represent the Class and ordering appropriate monetary, equitable and injunctive relief to remedy Defendants' violation of the common law and New York State law;

c.    An order tolling the statute of limitations;

d.    A declaratory judgment that the practices complained of herein are unlawful under the FLSA, NYLL and New York Common Law;

e.    An injunction against Defendants and their officers, agents, successors, employees, representatives and any and all persons acting in concert with Defendants, as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

f.    An award of compensatory damages as a result of Defendants' failure to pay regular "gap-time" wages, pursuant to the NYLL and supporting regulations;

g.    An award of compensatory damages as a result of Defendants' failure to pay overtime premiums pursuant to the FLSA and the NYLL and supporting regulations;

h.      An award of liquidated and/or punitive damages as a result of the Defendants'
willful failure to pay overtime compensation pursuant to the FLSA and the NYLL
and supporting regulations;

i.      An award of liquidated and/or punitive damages as a result of the Defendants'
willful failure to pay gap-time compensation pursuant to the NYLL and supporting
regulations;

j.      An award of prejudgment and post-judgment interest;

k.      An award of costs and expenses of this action together with reasonable attorneys'
and expert fees; and

l.      Such other and further relief as this Court deems just and proper.

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial
by jury on all questions of fact raised by the complaint.


Dated: New York, New York
       April 24, 2025

Respectfully submitted,

**PELTON GRAHAM LLC**


By: _____
Brent E. Pelton (BP 1055)
Taylor B. Graham (TG 9607)
111 Broadway, Suite 1503
New York, New York 10006
Telephone: (212) 385-9700
Facsimile: (212) 385-0800
Email: pelton@peltongraham.com
       graham@peltongraham.com

*Attorneys for Plaintiff and the Putative*
*FLSA Collective and Class*

**Notice of Shareholder Liability for Services Rendered**
**Pursuant to § 630 of the Business Corporation Law of New York**

Pursuant to the provisions of § 630 of the Business Corporation Law of New York ("NYBCL"), the ten (10) largest shareholders of **E-J ENERGY, LLC** and **E-J ELECTRIC INSTALLATION COMPANY,** are hereby notified that the plaintiff in this matter, individually and on behalf of the putative FLSA collective and the class he seeks to represent, intends to enforce your personal liability, as the ten (10) largest shareholders of **E-J ENERGY, LLC** and **E-J ELECTRIC INSTALLATION COMPANY** and charge you with indebtedness of said corporation to the plaintiffs for services performed for the corporation as employees during the six (6) year period preceding the filing of the complaint.

Dated: April 24, 2025

_____
Brent. E. Pelton

## <u>CONSENT TO BECOME PARTY PLAINTIFF</u>

By my signature below, I hereby authorize the filing and prosecution of claims in my name and on my behalf to contest the failure of **E-J Energy LLC**, and/or their respective owners, affiliated companies, subsidiaries, contractors, directors, officers, franchisees and/or affiliates to pay me overtime premium wages and all wages owed for all hours work, as required under state and/or federal law, and also authorize the filing of this consent in the action(s) challenging such conduct. I authorize being **named as the representative plaintiff** in this action to make decisions on behalf of all other plaintiffs concerning the litigation, the method and manner of conducting this litigation, the entering of an agreement with Plaintiff's counsel concerning attorneys' fees and costs, and all other matters pertaining to this lawsuit.  I understand that I will be represented by Pelton Graham LLC without prepayment of costs or attorneys' fees.  I understand that if plaintiff is successful, costs expended by attorneys on my behalf will be deducted from my settlement or judgment first. I understand that my attorneys may petition the court for an award of fees and costs to be paid by defendants on my behalf.  I understand that the fees retained by the attorneys will be either the amount received from the defendants or approximately 1/3 (33.33%) of my total settlement or judgment amount (including fees), whichever is greater.


DocuSigned by:

_____            _____
229278FA775848B

Signature                                    Dawid Hader

                                              Printed Name